**Fred CORMACK, Appellant,**

**v.**

**The WIL–MC CORPORATION, a corporation, Appellee.**

**No. 54100.**

Supreme Court of Oklahoma.

March 29, 1983.

Edward L. Moore, Ginder & Moore, Cherokee, for appellant.

Victor R. Grider, Lynn, Helms, Kirk & Burkett, Oklahoma City, for appellee.

SIMMS, Vice Chief Justice:

At issue in this appeal is whether the fee owner of an unleased mineral interest in a

tract incorporated by a forced pooling order may maintain a cause of action for surface damages against the unit operator. Fred Cormack, appellant, owns surface and minerals in eighty acres in Alfalfa County. As a result of a pooling action before the Oklahoma Corporation Commission, appellee Wil-Mc Corporation, obtained the right to drill an oil and gas well on the Cormack property within a 90 day period and was named unit operator. During the operations on said land, appellee built, inter alia, a lease road, pits and tank battery.

Because of a dispute over compensation to be paid appellant for surface damages, Cormack instituted this action to recover $3,500. The trial court sustained appellee's demurrer to appellant's second amended petition which resulted in an order of dismissal and this appeal.

The general rule in Oklahoma is that, absent a contrary provision in the lease, a lessee has no liability to his lessor for surface use necessary and incidental to the extraction of minerals. This rule, however, presupposes a voluntary contractual relationship, absent in the case of a compulsory pooling order, and has no application to a forced pooled lessor. Precisely because the rule is qualified by the phrase "absent a contrary provision in the lease", the basic configuration of duties and rights involuntarily established by the Commission's order *must* be treated differently than that voluntarily created in an ordinary lease.

An oil and gas lease grants by implication the right to use the surface because this right is absolutely necessary to obtain the thing granted—the minerals under the land. *Davon Drilling Co. v. Ginder,* Okl., 467 P.2d 470 (1970); *Summer's O. & G.* (Per Ed) § 652.

If the rule were otherwise, the rights to the minerals would be worthless. It is, therefore, implied that when a lessor negotiates with a lessee for the right to extract minerals, he knows the lessee will have to enter upon the surface to establish drilling operations. Presumably, the lessor negotiates a price for his lease that includes com-

pensation for damages to the surface which both parties contemplate at the time. If desired, the lessor can negotiate into the contract a provision requiring the lessee to compensate him for damages to the surface caused by the oil and gas exploration.

The lessor/lessee relationship is much different under a compulsory pooling order. The problem herein inherent was recognized in *Summers, O. & G.* (Per Ed) § 652.1:

> "Where the owners of adjacent tracts of land join in a community oil and gas lease for the development of their properties as a unit, it is not contemplated that the lessor will need to make use of the surface of all of the tracts for development purposes. This is particularly true where the tracts are small, such as town lots. *Where the drilling and other operations are all conducted on one tract, the owner of that tract bears an undue burden for the benefit of the community lessors, unless some adjustment is made in the lease.*"

Appellant had absolutely no opportunity to make an adjustment in the lease, as there was none. Appellant, the owner of an unsevered mineral interest, was forced by the Corporation Commission to participate in the unit operation. He was forced to accept the intrusion on his land occasioned by the order directing the well to be drilled there. It is impermissible under the Oklahoma Constitution to force him to accept this "undue burden" without just compensation.

Appellant here received the same compensation as the other mineral owners in the unit—compensation for their right to extract minerals. He is further, however, forced to tolerate whatever surface damage is reasonably necessary to extract the minerals for the benefit of all. In a voluntary transaction, he could negotiate for additional compensation for this additional burden.

Where, as in the case before us, a forced-pooled surface and mineral owner is required by the State to accept surface damage to his property, and, where he has no opportunity to negotiate for compensation therefor, the Oklahoma Constitution, Art. 2,

Sec. 23, requires that he must be given a cause of action for such compensation.

Moreover, since the filing of this appeal, the legislature has seen fit to enact a series of provisions, 52 O.S.Supp.1982, § 318.2 through § 318.9, specifically recognizing the owner's right to maintain a cause of action for surface damages against the unit operator. These provisions also outline a method for negotiation of surface damages.[1]

While not before us in this appeal, these provisions set out guidelines for a cause of action whose existence we recognize in our State Constitution.

Judgment of the Trial Court Reversed, and Cause Remanded with Directions to Reinstate Plaintiff's Petition.

BARNES, C.J., HODGES, LAVENDER, DOOLIN and HARGRAVE, JJ., and REYNOLDS, Senior Judge, concur.

IRWIN and OPALA, JJ., dissent.

1. Another recent enactment, 17 O.S.1981, § 53.1 and § 53.2, directs the Corporation Commission to prescribe and promulgate rules and regulations requiring the operator "to leave the surface, as nearly as practicable, in the condition it was before such operating equipment, structures, surface debris, abutments and obstacles were placed thereon, unless the owner of the land and the abandoning party have entered into a contract providing otherwise."